UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | } | |
| Christina Blasco, | } | CASE NO. 06-40634-JJR-13 |
| Debtor. | } | CHAPTER: 13 |

___

| | | |
|---|---|---|
| Christina Blasco, | } | |
| Plaintiff, | } | ADV. P. NO.: 06-40087 |
| v. | } | |
| Money Services Center d/b/a Cash Connection | } | |
| Defendant. | } | |

**MEMORANDUM OPINION**
**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The above case came before the Court on the defendant's motion for summary judgment filed on August 1, 2006, in response to the debtor-plaintiff's complaint alleging the creditor-defendant violated the automatic stay [i.e. 11 U.S.C. § 362(a)] by cashing the plaintiff's check after she filed a petition for relief under Chapter 13 of the U.S. Bankruptcy Code. The defendant avers it did not violate the automatic stay because of the exception provided in 11 U.S.C. § 362(b)(11). The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. The Court heard oral arguments on September 12, 2006 and directed the parties to file additional briefs dealing with whether the check at issue qualified as a negotiable instrument. For the reasons stated below, the

1

Court finds the motion for summary judgment is due to be GRANTED.

## Background

On April 15, 2006, the plaintiff received a "payday loan" for $500.00 from the defendant. In exchange for the $500.00 loan, the plaintiff gave the defendant a check for $587.50, which was intended to pay the principal of the loan plus interest and fees. The defendant agreed to hold the check until April 29, 2006. On May 9, 2006, the debtor-plaintiff filed for Chapter 13 bankruptcy relief. For purposes of this summary judgment, the defendant stipulates it received notice of the plaintiff's bankruptcy before negotiating her check. On May 16, 2006, the defendant presented the plaintiff's check for payment, but it was returned due to insufficient funds. Although the check was not paid, the plaintiff did incur NSF charges imposed by her bank for issuing an insufficient check. On June 1, 2006, the plaintiff initiated this adversary proceeding for violation of the automatic stay.

## Positions of the parties

The defendant argues that because the check was a negotiable instrument, depositing and presenting it for payment was not a violation of the automatic stay pursuant to the exemption provided in Section 362(b)(11) of the Bankruptcy Code. The defendant cites various cases where courts have concluded presentment of a negotiable instrument is not a violation of the automatic stay. For example, in Thomas v. Money Mart Fin. Serv., Inc. (In re Thomas), the Eighth Circuit found Money Mart, the creditor in a payday loan transaction, was specifically excepted from the stay when it attempted to obtain payment on checks by tendering them to the drawee bank. 428 F.3d 735 (8th Cir. 2005). The defendant contends checks for cash advance loans are "negotiable instruments" as defined by case law. See Franklin v. Qwick Cash of Martin (In re Franklin), 254 B.R. 718, 720 (Bankr. W.D. Tenn. 2000) (cash advance business deferred presentment of plaintiff's check, and the

court found such presentment of the negotiable instrument after the petition date was not a violation of the automatic stay); see also In re Noffsinger, 316 B.R. 283 (Bankr. W.D. Ky. 2004) (the court found presentment of debtor's 19 checks fell within the definition of negotiable instrument, and the plain language of the automatic stay statute controlled, exempting the creditor from the automatic stay; however, the creditor in this case was not a cash advance / payday loan creditor).

In contrast, the plaintiff's brief in opposition to the defendant's motion for summary judgment contends the payday advance transaction between the plaintiff and defendant did not create a negotiable instrument as exempted by Section 362(b)(11). She argues the Court should not look to Title 7, Article 3 of Alabama's Commercial Code to determine whether the check is a negotiable instrument, but rather the Court should rely on Title 5, Chapter 18A of the Alabama Code, which contains the Deferred Presentment Services Act. The plaintiff contends Alabama law does not recognize the check presented by the plaintiff to the defendant as a negotiable instrument but rather should be considered as part of a loan agreement under the Deferred Presentment Act. Thus, the plaintiff asserts the Thomas decision is inapplicable in Alabama because it was decided under Missouri law, which does not have a Deferred Presentment Act, and because the Thomas case was decided prior to Alabama's enactment of its Deferred Presentment Act.

**Analysis**

The Bankruptcy Code does not define "negotiable instrument." However, Section 7-3-104(a) of the Alabama Code, defines a negotiable instrument as:

> [A]n unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it: (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;

3

(2) is payable on demand or at a definite time; and (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money . . . .

Following oral arguments on the defendant's motion, the Court directed the parties to further brief the issue of whether this particular check was a negotiable instrument because of how the amount of the check was completed by the plaintiff. As stated above, to be a negotiable instrument, the plaintiff's check must satisfy the requirements of Ala. Code § 7-3-104(a). One of these requirements is it must be an unconditional promise to pay a "fixed amount of money." The numerical amount of the check is "$587.50", but the amount stated in words reads "five eighty-seven and 50/100 dollars." The Court must first determine whether the ambiguity on the face of the check was sufficient to cause the check not to be payable for a fixed amount of money, thus taking it out of the definition of a negotiable instrument. If the check is not a negotiable instrument, then the defendant cannot benefit from the exception to the automatic stay.

The plaintiff and the defendant knew the check was intended for its numerical amount (i.e. $587.50) because there were other writings confirming the amount of the payment due when the loan matured. However, "[n]egotiability is determined from the face, the four-corners, of the instrument without reference to extrinsic facts." Participating Parts Assoc., Inc. v. Pylant, 460 So. 2d 1299 (Ala. Civ. App. 1984), quoting Holsonback v. First State Bank, 394 So. 2d 381 (Ala. Civ. App. 1981). Because we know the terms of the underlying transaction, we know that the word "hundred" was omitted from the amount of the check stated in words. The plaintiff intended to make the check payable in the fixed amount of "five *hundred* eighty-seven and 50/100 dollars." However, what if the transaction required the Plaintiff to pay five *thousand* eighty-seven and 50/100 dollars? From

4

the four corners of the check, a stranger to the transaction might not know what amount was intended from the word description of the amount of the check, e.g. hundred, thousand, etc. Obviously, he or she would assume it was "hundred" because the numerical amount was unambiguous. Could a stranger safely rely on the numerical amount in dealing with the check?

In 1995, Section 7-3-114 of the Alabama U.C.C. replaced former Section 7-3-118(b) and (c). Former Section 7-3-118(c) provided, "[w]ords control figures except that if words are ambiguous, figures control." If the former section was still the law, we could stop here, because the ambiguous words stating the amount of the check could be ignored, and the unambiguous numbers or figures would control. However, this is no longer the law. Ala. Code § 7-3-114 now provides, "[i]f an instrument contains *contradictory* terms, typewritten terms prevail over printed terms, handwritten terms prevail over both, and *words prevail over numbers*." (Emphasis supplied). If words prevail over numbers, then the check is payable in the amount of five eighty-seven and 50/100 dollars, which is not a fixed amount of money. If these words were the only reference on the face of the check available to determine if the check was payable for a fixed amount, then it would not pass the test of being a negotiable instrument. However, the amount of the check is also indicated in unambiguous numbers. Are the numbers sufficient to remove the ambiguity in the amount described by the words? In light of the requirement that "words prevail over numbers," can the numerical amount overcome the ambiguity? The Court believes the answer is yes.

For the words to prevail over numbers, the two must be "contradictory." Ala. Code § 7-3-114. The words "five eighty-seven and 50/100 dollars" do not contradict the numbers $587.50. The numbers clarify the ambiguity in the words. If, for example, the words conflicted with the numbers (e.g. five *thousand* eighty-seven and 50/100 dollars vs. $587.50), then the two would be

5

contradictory, and the amount stated in words would prevail over the amount shown in numbers. The Court finds that since the amount of the check stated in words is ambiguous but does not contradict the amount stated in numbers, the words do not prevail in the determination of the check amount. Since the numerical amount is not ambiguous, it is possible to determine the fixed amount of money payable to the defendant's order by referring only to the face of the plaintiff's check.

The next issue to determine if this check was a negotiable instrument is whether the promise to pay was unconditional.[1] Ala. Code § 7-3-106 explains that a promise or order is unconditional unless it contains an express condition to payment, or the order is subject to or governed by another writing, or the rights or obligations with respect to the order are stated in another writing. The plaintiff asserts the Customer Agreement executed in connection with the loan is the "other writing," thus the plaintiff's check is not a negotiable instrument because it was conditioned upon the terms of the Customer Agreement. The Court disagrees that the plaintiff's check states it is subject to or governed by another writing as set out in Section 7-3-106(a), because the check itself contains no conspicuous statement referring to another writing. As stated above, negotiability is determined from the face, the four corners, of the instrument without reference to extrinsic facts, thus the check itself must reference another writing. See Holsonback v. First State Bank of Albertville, 394 So. 2d 381 (Ala. Civ. App. 1980). The Court may not look to the Customer Agreement to determine whether or not the check qualifies as a negotiable instrument. Moreover, Ala. Code § 7-3-117 (other agreements affecting instrument) is not applicable to the check at issue because there is no notation

---

[1] The parties do not dispute whether the check was payable to bearer or order at the time it was issued or first came into possession of the holder, as required by Ala. Code § 7-3-104(a)(1) (1975). Thus this element of negotiability is not in issue.

6

on the face of the check rendering it conditional upon another writing.[2] The Customer Agreement may create rights, remedies and defenses as between the plaintiff and defendant, but because a stranger to the transaction would not have notice of the separate agreement when dealing with the check, the Customer Agreement should not be considered in determining whether the check is a negotiable instrument.

The plaintiff also asserts the check was not a negotiable instrument because it was controlled by Alabama's Deferred Presentment Services Act ("DPSA"). The plaintiff is correct that the transaction, including the check, falls squarely under the DPSA; however, that does not affect the check's status as a negotiable instrument. It is clear that when determining whether an instrument is a negotiable instrument, a party dealing with the check is not required to look beyond the four corners of the check. See Meyer v. Meyer, 2006 WL 1302609 (Ala. App. May 12, 2006) (Alabama courts do not look beyond the four corners of an instrument unless it contains latent ambiguities). In other words, the underlying transaction for which the check was made is not a factor. If the check had a notation on its face that it's payment was subject to the payee's compliance with DPSA, then someone dealing with the check might be put on notice that certain conditions must be met before the check can be presented for payment. A check with such a notation would not satisfy the requirement of U.C.C. Section 7-3-104, which requires a negotiable instrument not to state any other

---

[2] Ala Code § 7-3-117 (1975) provides, "[s]ubject to applicable law regarding exclusion of proof of contemporaneous or previous agreements, the obligation of a party to an instrument to pay the instrument may be modified, supplemented, or nullified by a separate agreement of the obligor and a person entitled to enforce the instrument, if the instrument is issued or the obligation is incurred in reliance on the agreement or as part of the same transaction giving rise to the agreement. To the extent an obligation is modified, supplemented, or nullified by an agreement under this section, the agreement is a defense to the obligation."

7

undertaking or instruction by the maker in addition to the payment of money. The DPSA does not contain any language suggesting a check given as payment for a deferred presentment loan cannot be a negotiable instrument if it otherwise satisfies the requirements of a negotiable instrument under the U.C.C. It simply defines a check as "[a] debit authorization or a check signed by the maker and made payable to a person licensed under this chapter." Ala. Code § 5-18A-2(1) (1975). Thus without resorting to extrinsic evidence, it can be determined that the check is an unconditional order to pay the fixed sum of $587.50 to the defendant, without any other undertaking or instruction by the plaintiff. The ambiguous amount stated in words does not contradict the amount stated in numbers, and the numbers remove the ambiguity.

The Court also finds the check meets the requirements for a negotiable instrument as set out in Section 7-3-104 of the Alabama Code because it was payable at a definite time.[3] The plaintiff argues that the check is not a "check" as defined in Section 7-3-104(f) because it is not payable on demand. The Court disagrees. Section 7-3-108(a) provides that a "[check] is 'payable on demand" if it (i) states that it is payable on demand or at sight, or otherwise indicates that it is payable at the will of the holder, or (ii) does not state any time of payment." The check at issue does not state any time of payment; it is, therefore, payable on demand. Thus the check is a negotiable instrument, and its negotiation, deposit and presentment for payment fell within the exception to the automatic stay

---

3 The Court will not delve into the intricacies of the issue of whether the check was a negotiable instrument based on when it was payable because this issue was not raised by the parties. However, the Court's reasoning is as follows: Clearly based on the four corners of the check, it was payable on demand on April 15, 2006, which was the date of the loan transaction and the date written on the check. Based on the Customer Agreement, the check was not to be presented until April 29, 2006. A stranger to the transaction would not know of the conditions imposed by the Customer Agreement, thus on its face the check was payable on April 15, 2006.

provided by Section 362(b)(11) of the Bankruptcy Code.[4]

## Conclusion

For the reasons stated above, the plaintiff's check was a negotiable instrument governed by Article 3 of the Alabama U.C.C. Presentment of a negotiable instrument is not a violation of the automatic stay. 11 U.S.C. § 362(b)(11). Payday loan companies were non-existent or at least not as prevalent when Alabama enacted the U.C.C. or when its last major revision was adopted in 1995. However, the payday loan industry was going strong when the U.S. Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), and Congress did not make amendments to the Bankruptcy Code to restrict postpetition presentment of debtor's checks by payday loan lenders. To the extent the subject was even on the mind of Congress at the time it was considering BAPCPA, perhaps it believed that the avoidance powers in Section 549 of the Bankruptcy Code are a sufficient remedy to protect the estate from such transfers. In any event, there is an overriding consideration that must be kept in mind: the efficiency of commerce and the banking system. If every party to whom a check is negotiated must determine if there are unknown conditions attached to payment of the check, the system would quickly fail. In addition to checks made to cover payday loans and therefore subject to separate customer agreements and controlling state laws regulations, parties dealing with checks would have to investigate whether they were made in connection with illegal transactions or otherwise legitimate transactions where the maker might have a defense to payment for reasons not ascertainable from the face of the check. Nonetheless,

---

[4]As mentioned, the plaintiff's check was not paid, and her only damages were the NSF fees charged to her account by her bank. Although the Court is holding that the automatic stay was not violated because of the exception provided under 11 U.S.C. § 362(b)(11), if the check had been paid, the Court would then be faced with determining whether the funds received by the defendant would constitute a postpetition transfer subject to avoidance under 11 U.S.C. § 549.

9

while the Court believes debtor transactions with payday loan companies were not necessarily on the mind of Congress when it originally enacted Section 362, the plain meaning of the law is clear. There is no need for a court to inquire beyond the plain language of a statute when the language is coherent and consistent.  Jove Eng'g, Inc. v. I.R.S. (In re Jove Eng'g), 92 F.3d 1539 (11th Cir. 1996). For the reasons stated herein, the defendant's motion for summary judgment is hereby GRANTED, and judgment is hereby rendered in favor of the defendant and against the plaintiff on all claims asserted in this adversary proceeding.  Costs are taxed as paid.  A separate order shall be entered reflecting the above opinion of the Court.

    Dated:  October 26, 2006

/s/ James J. Robinson  
JAMES J. ROBINSON  
United States Bankruptcy Judge